Christine BABBITT, on behalf of herself and as next friend of her minor children; Kimberly Campbell, on behalf of herself and as next friend of her minor children; Sharon McMurphy, on behalf of herself and her minor child; Cornelia Sims; Karyl Edwards; and Michigan Welfare Rights Organization, each on behalf of a class of similarly situated persons, Plaintiffs,

v.

STATE OF MICHIGAN, through its DEPARTMENT OF SOCIAL SERVICES; Gerald Miller, in his official capacity as Director of the Michigan Department of Social Services; and Eileen Ellis, in her official capacity as Acting Director of the Medical Services Administration of the Michigan Department of Social Services, Defendants.

No. 4:91–cv–56.

United States District Court,
W.D. Michigan.

Oct. 30, 1991.

Michael O. Nelson, Legal Aid of Western Michigan, Grand Rapids, Mich., Kathleen A. Gmeiner, Susan K. McParland, Marilyn T. Mullane, Michigan Legal Services, Detroit, Mich., for plaintiffs.

Kathleen A. Gmeiner, Susan K. McParland, Marilyn T. Mullane, Michigan Legal Services, Detroit, Mich., Mary Ellen Drolet, Berrien Cnty. Legal Svcs. Bureau, Inc., St. Joseph, Mich., for Sims.

Kathleen A. Gmeiner, Susan K. McParland, Marilyn T. Mullane, Michigan Legal Services, Detroit, Mich., for Edwards.

Susan A. Harris, Asst. Atty. Gen., Stephen H. Garrard, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Corrections Div., Detroit, Mich., William R. Morris, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This case is before the Court on two motions: 1) defendants' May 6, 1991 motion for dismissal, or in the alternative, for summary judgment; and 2) plaintiffs' motion for designation as a class action.[1] Plaintiffs are proposed representatives of three classes and one subclass of medicare and medicaid beneficiaries in the State of Michigan: all persons in the State of Michigan who are medicaid recipients or who have an active medicaid "spend-down case"; recipients of the aid to families with dependent children program (AFDC) or those who had been recipients of AFDC prior to the ratable reduction imposed March 1, 1991; all persons who, on or after April 1, 1991, were eliminated from the OBRA/QMB medicaid program or who have been denied eligibility for medicaid benefits but would have qualified for medicaid benefits if OBRA/QMB had not been eliminated; and

---

1. Plaintiffs have also moved for oral argument on defendants' motion to dismiss, or in the alternative, for summary judgment. Because there are no material issues of fact, plaintiffs' motion is denied.

medicaid beneficiaries who receive or are medically in need of podiatry services.[2]

This lawsuit arises out of various actions taken by defendants to reduce the expenditures of the Michigan Department of Social Services (DSS). Plaintiffs claim that certain of defendants' budget-cutting actions violate federal law. The claims remaining at issue are: 1) an approximate 8–9% cut in benefits [3] to recipients under AFDC; and 2) elimination of medicaid eligibility for certain qualified medicare beneficiaries. Plaintiffs seek injunctive and declaratory relief in their underlying complaint.

Plaintiffs' original complaint, filed April 19, 1991, was amended on May 1, 1991, and plaintiffs moved for a temporary restraining order and preliminary injunction on May 2, 1991. The Court issued a temporary restraining order as to one of plaintiffs' claims on May 2, 1991. The Court denied plaintiff's motion for a preliminary injunction on May 10, 1991. I concluded that even though plaintiffs had shown irreparable harm, plaintiffs had not demonstrated a likelihood of success on the merits and any public benefit that would have resulted from issuance of the injunction was offset by the harm to third parties that would have occurred as a result of the state budget limitations imposed by the state legislature.

## I. Background

The Michigan Constitution mandates a balanced state budget. Mich. Const. art. V, §§ 18 & 20. Responding to a projected deficit in excess of $800 million by the end of the fiscal year ending September 30, 1991, the Michigan legislature enacted an across-the-board 9.2% cut in appropriations of state general purpose/general funds for all state agencies and programs, with cer-

tain enumerated exceptions relating to educational organizations. 1990 P.A. 357. Because the DSS and the legislature were unable to agree on a revenue transfer package by January 22, 1991, the 9.2% reduction was automatically applied to the DSS budget. As a result, the DSS director had the obligation to implement cost-saving measures within the department, subject to applicable state and federal laws.

Due to the legislative mandate, on March 1, 1991, the DSS reduced AFDC benefit levels by 17%.[4] Pursuant to Michigan Public Act 68, approximately one-half of the March 1st cuts have been restored, but the benefits are allegedly still well below those in effect in 1988. Plaintiffs' Response at 1–2. Although an amendment for the 17% cuts was allegedly submitted and approved by HHS, it is not known whether another amendment has been submitted as to the restored benefits.

On April 1, 1991, the DSS also eliminated an optional program enacted pursuant to the Omnibus Budget Reconciliation Act of 1986 (the OBRA/QMB program),[5] which enabled qualified medicare beneficiaries with incomes less than 90% of the federal poverty level to be eligible for medicaid benefits. Plaintiff alleges that this elimination affects approximately 12,000 state residents. On June 18, 1991, DSS submitted an amendment eliminating the OBRA/QMB program effective April 1st, but it is unknown whether the Department of Health and Human Services (HHS) has responded to it.

Plaintiffs' amended complaint, brought pursuant to 42 U.S.C. § 1983, contains three counts: 1) defendants' reduction in the AFDC benefits violates 42 U.S.C. §§ 1396a(c) & 1396b(i)(9); 2) defendants' reduction in AFDC benefit levels has re-

---

**2.** The claims asserted by the representatives of this class are dismissed as moot because it is undisputed that the legislature and executive of the State of Michigan reached a compromise regarding the alleged plan to suspend the medicaid program. *See* 1991 P.A. 68.

**3.** The parties agreed that plaintiffs' claims challenging the elimination of podiatry services as a service covered under medicaid should be dismissed as moot. *See* Order, filed May 10, 1991.

**4.** At the end of March, DSS submitted an amendment to its Title IV–A plan reducing AFDC payment levels by 17%. On June 28, 1991, the Department of Health and Human Services (HHS) approved the amendment. Plaintiffs' Response at 2.

**5.** Michigan chose to implement the OBRA/QMB program pursuant to 42 U.S.C. § 1396a(m).

sulted in the state failing to provide benefits in conformity with its state plan, which violates 42 U.S.C. § 602(a)(1); and 3) defendants' elimination of the OBRA/QMB program violates 42 U.S.C. § 1396a(a)(1).

## II. AFDC Reductions

AFDC is a cooperative, voluntary federal-state program which provides aid and services to needy families with children. 42 U.S.C. § 601. The federal government may make payments to only those states which have "submitted and had approved by the Secretary, State plans for aid and services to needy families with children." [6] Id. The state plan must describe the nature and scope of the state's AFDC program and provide assurances that "it will be administered in conformity with the specific requirements stipulated" in the Social Security Act, its regulations, and other "applicable official issuances of the Department." 45 C.F.R. § 201.2. Plaintiffs allege that the reductions in benefits implemented by the State of Michigan are a violation of the Social Security Act because the state is no longer in compliance with its approved state plan and because the reductions are below the allegedly mandatory maintenance of level provisions.

## A. Colorado River Abstention

At least several months prior to the institution of this action, a number of individuals and organizations sought declaratory and injunctive relief against certain aspects of the DSS budget reductions in a state court action, *Michigan Ass'n for the Education of Young Children v. Miller*, Wayne County Cir. Court No. 91–104221–CL. One of the organizational plaintiffs in the state court action was the Michigan Fair Budget Action Coalition, which is a confederation of human service organizations that includes the Michigan Welfare Rights Organization—the organizational plaintiff in this action. In the state court action, plaintiffs asserted 12 grounds for relief, including a section 1983 claim that defendants' ratable reduction in the AFDC grant levels violated the Social Security

Act. First Amended Complaint, Count XII, Defendants' Brief in Support, Ex. 2.

The state court conducted a prompt preliminary injunction hearing on count XII, as well as on other state law counts. On April 18, 1991, the state court denied plaintiffs' motion for a preliminary injunction, and also granted summary judgment in favor of defendants as to count XII, along with other state law counts. Defendants' Brief in Support, Ex. 5. The following day, on April 19, 1991, plaintiffs filed their complaint in this Court. Plaintiffs then appealed the state court's ruling in the Michigan State Court of Appeals.

Defendants argue that this Court should abstain from exercising federal jurisdiction over plaintiffs' complaint because plaintiffs' claims of relief for the AFDC and medicaid classes are identical to the federal claims contained in count XII of the complaint filed in state court. Plaintiffs counter this argument with the contention that consideration of the relevant factors weigh against abstention in this case.

## 1. Standard

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976), the United States Supreme Court approved of dismissing a federal action under extraordinary circumstances in order to avoid duplicative litigation when a state court had exercised concurrent jurisdiction over the claims at issue in the federal action. The Court set forth specific guidelines for the district court to follow in determining whether it should abstain from exercising jurisdiction over a case when a similar case is pending in a state court. The first factor to consider is whether or not the state or federal court has exercised jurisdiction over property. Id. 424 U.S. at 818, 96 S.Ct. at 1246. "[A] federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." Id. (citations omitted).

---

6. "Secretary" refers to the Secretary of Health and Human Services. 45 C.F.R. § 201.1(d).

The Supreme Court advised that no one factor is determinative and "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818–19, 96 S.Ct. at 1246–47.

The holding in *Colorado River* was clarified further in the more recent case, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). If the claim involves a federal statute, the most significant factor would be evidence of " 'clear federal policy ... [of] avoidance of piecemeal adjudication.' " *Id.* 460 U.S. at 16, 103 S.Ct. at 937 (quoting *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 12). An additional factor identified in *Moses* is how far the federal proceedings have progressed in relation to the proceedings in the state court action. *Id.* The Court in *Moses* warned that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. at 937.

In *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984), the Sixth Circuit listed five factors the Court should consider: 1) whether federal or state law governs the outcome of the case; 2) whether either court has assumed jurisdiction over any res; 3) whether the federal forum is less convenient to the parties; 4) avoidance of piecemeal litigation; and 5) the order in which jurisdiction was obtained. The parties in the two cases do not have to be identical. *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir.1990). The Ninth Circuit in *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir.1989), added two other factors the Court should consider: 1) whether the state proceeding is adequate to protect the parties' rights; and 2) whether the subsequent suit is an attempt to forum shop or avoid adverse rulings by the state court. *Id.* at 1415 & 1416.

The concerns underlying this so-called *Colorado River* abstention doctrine have been summarized well by the Seventh Circuit:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 694 (7th Cir.1985).

## 2. Discussion

■ There is no doubt that a strong presumption exists in favor of exercising jurisdiction over the federal claims at issue in this case. In order to prevail in the face of this presumption, defendants must demonstrate clear and convincing evidence that under the circumstances presented, the Court should defer to the state court proceedings. I conclude that defendants have not met this burden.

Plaintiffs in this case assert that the ratable reductions in AFDC grant levels violate three provisions of the Social Security Act: 42 U.S.C. §§ 1396a(c), 1396b(i)(9), & 602(a)(1). Plaintiffs' amended complaint in state court alleged that defendants' AFDC reductions violated 42 U.S.C. § 1396a(c), but the complaint does not claim violations of §§ 1396b(i)(9) or 602(a)(1).

I find that this Court should not abstain from exercising jurisdiction over plaintiffs' claims that defendants' reductions in AFDC grants are a violation of the Social Security Act. Neither court has exercised jurisdiction over any res, and none of the parties have even argued that the state forum is more convenient to the parties. Even though the state court action was instituted first and has proceeded to a decision on the merits, federal law controls the claims and the action in state court is not adequate to protect the parties' rights. Plaintiffs in state court only asserted a

946

violation of section 1396a(c), but not the other sections of the Social Security Act. In addition, since the decision in state court, the Secretary has approved the state's application for an amendment and plaintiffs have filed a second section 1983 complaint in federal court against the Secretary and other federal officials. Because this Court has before it the complaint against the federal officials, abstention will not prevent piecemeal litigation, will not appreciably conserve judicial resources, and will not effectuate full comity to the sovereignty of the state courts.

**B. Dismissal or Summary Judgment**

Defendants also argue that the Court should dismiss plaintiffs' claims regarding the AFDC reductions, or, in the alternative, defendants argue that the Court should grant summary judgment as to those claims. Federal Rules of Civil Procedure 12(b) provides that a motion to dismiss pursuant to Rule 12 should be considered as a motion for summary judgment under Rule 56 if the Court considers affidavits, depositions and other proofs beyond the pleadings.

*1. Standard*

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale,* 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

*2. Discussion*

Neither the provisions governing the AFDC program nor its implementing regulations set limits regarding the AFDC grant levels. Congress has not chosen to

directly mandate at what level participating states must maintain grants to eligible beneficiaries under the AFDC program. However, Congress has enacted two provisions in the medicaid program statute which at least encourage states to maintain benefits above certain levels. Plaintiffs argue that these provisions establish mandatory limits below which the states may not reduce benefits. Even if these provisions establish a "federal right" that is enforceable by plaintiffs in a section 1983 action, *Wilder v. Virginia Hosp. Ass'n,* —— U.S. ——, 110 S.Ct. 2510, 110 L.Ed.2d 455, 467–68 (1990), I find that plaintiffs' claims are without statutory or other legal support.

a. Section 1396a(c)

█ Plaintiffs' claim that defendants' reductions in the AFDC grant levels violate 42 U.S.C. § 1396a(c) is without merit. Section 1396a(c) provides in relevant part that "the Secretary shall not approve any State plan for medical assistance if (1) the State has in effect, under its [AFDC state] plan ..., payment levels that are less than the payment levels in effect under such plan on May 1, 1988." In other words, Congress has decided that if a state reduces its AFDC grants below the amount provided as of May 1, 1988, the Secretary may not approve changes in the state's *medicaid* plan.

Plaintiffs argue that "[i]t is clear that the primary purpose of the legislation was to keep benefit levels at or above '88 levels." Plaintiffs' Brief in Opposition at 10. I disagree because the legislative history of the provision does not support such a view. Prior to the 1988 amendment, 42 U.S.C. § 1396a(c) prohibited the Secretary from approving "*any* State plan for medical assistance if he determines that the approval and operation of the plan will result in a reduction in aid or assistance in the form of money payments ... provided for eligible individuals under a[n] [AFDC] plan." Legislative history indicates that this provision was enacted "to make certain that states do not divert funds from the provision of basic maintenance to the provision of medical care.... The provision is intended to prevent any unwarranted diversion of funds from basic maintenance to medical care." S.Rep. No. 404, 89th Cong., 1st Sess., pt. 1, at 82–83 (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2023.

In 1988, Congress amended section 1396a(c), establishing a threshold at the May 1, 1988 levels. Under the amendment, the Secretary only has to disapprove of those medicaid plans which would result in a decrease of AFDC benefits below the May 1, 1988 levels. The legislative history of this amendment indicates that Congress was particularly concerned that states would divert funds from AFDC to subsidize new mandatory medicaid benefits required for pregnant women and infants. The House and Senate joint statement on the 1988 amendments explains the purpose of the amendment as follows: "[T]o assure that the resources for mandatory coverage of pregnant women and infants up to 100 percent of poverty are not diverted from the Aid to Families with Dependent Children (AFDC) program, all States are prohibited from reducing their cash assistance payment levels to families with dependent children below the levels in effect on May 1, 1988." House Conf.Rep. No. 100–661, 100th Cong., 2d Sess. 256 (1988), *reprinted in* 1988 U.S.C.C.A.N. 923, 1034. The effect of the amendment was to give to the states more flexibility in setting AFDC benefit levels. For instance, if a state raised its AFDC grant levels in 1989, but then wanted to lower the levels in 1990 in order to increase funding to the medicaid program for pregnant women and infants, it could do so as long as the AFDC benefits were not reduced below those provided on May 1, 1988.

Section 1396a(c) does not prohibit defendants from reducing AFDC benefits, but merely provides for possible consequences should defendants do so. Accordingly, I find that the State of Michigan's reductions of the AFDC grants to levels below those in effect on May 1, 1988 do not violate 42 U.S.C. § 1396a(c). Additionally, plaintiffs have not demonstrated that the state implemented the reductions in order to fund any part of the medicaid program. In fact, as

discussed *infra,* the state has also implemented significant cuts in its medicaid benefits independent of the AFDC reductions.

### b. Section 1396b(i)(9)

■ Plaintiffs' complaint also alleges that the AFDC reductions violate section 1396b(i)(9) of the Medicaid Act. Like section 1396a(c), this section provides for certain consequences should a state reduce AFDC grant levels below a threshold amount. In this provision, Congress provided that if a state, like Michigan, has elected to expand medicaid benefits to pregnant women and children above 100% of the poverty level, it may not reduce its AFDC benefits below those in effect on July 1, 1987, without losing federal grants for that optional pregnant women and infants medicaid program.[7] 42 U.S.C. § 1396b(i)(9).

Plaintiffs have not argued application of this section in their response to defendants' motion. It is thus unclear whether the reductions currently in effect, after the action taken by the state over the summer, make the grants below those in effect on July 1, 1987. Even if they do, I find that the reductions in themselves are not unlawful. At most, section 1396b(i)(9) provides for certain consequences should a state decide to reduce grant levels below those in effect on July 1, 1987.

### c. Section 602(a)(1)

■ Finally, plaintiffs claim that the reductions in AFDC benefits are unlawful because, at the time of the first amended complaint, defendants had not applied for an amendment to the state plan. Section 602(a)(1) provides in relevant part that "[a] State plan for aid and services to needy families with children must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. 602(a)(1). Since the time plaintiffs instituted this action, defendants have ap-

plied for and obtained an amendment providing for the reductions in the AFDC grant levels, effective March 1, 1991. Accordingly, I find that plaintiffs' claim under this section has been rendered moot by the Secretary's approval of the amendment incorporating the AFDC reductions into the state's AFDC plan.

In conclusion, I grant summary judgment in favor of defendants as to plaintiffs' claims that the ratable reductions in AFDC grants are a violation of the Social Security Act, 42 U.S.C. §§ 1396a(c), 1396b(i)(9), & 602(a)(1).

### III. Elimination of the OBRA/QMB Program

Defendants also move for summary judgment as to plaintiffs' challenge of the state's elimination of the OBRA/QMB program. Plaintiffs' complaint alleges that defendants' elimination of the program is unlawful pursuant to 42 U.S.C. § 1396a(a)(1) because defendants have not amended the state medicaid plan. In their brief, plaintiffs also argue that because of the AFDC reductions, section 1396a(c), discussed *supra,* prohibits the Secretary from approving any amendment incorporating the elimination of the OBRA/QMB program into the state medicaid plan. Defendants argue that section 1396a(c) does not apply to the elimination of the OBRA/QMB program because it is an optional program, which from its inception was made conditional on the state's ability to subsidize it.

### A. Statutory Framework

Title XIX of the Social Security Act establishes a cooperative federal-state program to cover the costs of "providing medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. This program is known as

---

7. Defendants raise an issue regarding whether in fact Michigan's program is an optional program that is subject to loss of federal funds under this provision because it predates enactment of 42 U.S.C. § 1396a(*l*)(2)(A)(iv). The Court does not have to reach this issue because I find that section 1396b(i)(9) does not give plaintiffs affirmative rights to AFDC benefits above those in effect on July 1, 1987.

medicaid. Participation in medicaid is voluntary, but if states choose to participate, they must comply with certain requirements of the Medicaid Act (Act) and regulations promulgated by the Secretary of HHS. *Wilder v. Virginia Hosp. Ass'n,* —— U.S. ——, ——, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455, 462 (1990). In order to become eligible for federal assistance under the Act, states must submit to the Secretary for approval a plan for medical assistance (state plan). 42 U.S.C. § 1396. The federal government provides grants to those states with an approved state plan that is being administered by the political subdivisions of the state. *Id.* §§ 1396 & 1396a(a)(1).

Section 1396a(a)(1) provides in relevant part that "[a] State plan for medical assistance must—(1) provide that it shall be in effect in all subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. § 1396a(a)(1). The provisions for amending state plans are anything but clear. No provision in the Medicaid Act or its implementing regulations specifically provides for when a state must submit amendments of the state plan for approval, but given section 1396a(a)(1), at some point it must.

## B. Discussion

[6] Defendants have applied for an amendment incorporating the elimination of the OBRA/QMB program into the state plan. Plaintiffs argue that this application is insufficient to bring the state into compliance with its state plan because, given the AFDC reductions, the Secretary cannot approve the amendment pursuant to 1396a(c). I disagree. Accordingly, I find that defendants are not in violation of section 1396a(a)(1).

Congress has not foreclosed enforcement of the Medicaid Act under 42 U.S.C. § 1983. *Wilder,* —— U.S. at ——, 110 S.Ct. at 25, 110 L.Ed.2d at 474–76. At issue, however, is whether 42 U.S.C. § 1396a(a)(1) creates a "federal right" that is enforceable by these plaintiffs in a section 1983 action. Resolution of this issue requires satisfaction of a three-pronged test: 1)

Congress intended the relevant provision to benefit the putative plaintiff; 2) the right must be binding on the governmental unit and not just reflective of congressional preference for a certain kind of conduct; and 3) the asserted interest must not be "too vague and amorphous." *Id.* at ——, 110 S.Ct. at 2523, 110 L.Ed.2d at 467. Congress expressly provides in section 1396a(a)(1) that administration of the approved state medicaid plan is mandatory. It is clear, moreover, that medicaid recipients are the intended beneficiaries of this provision. However, given the vague procedure for amending state plans, plaintiffs' asserted interest may be too vague and amorphous. Even if plaintiffs have rights under section 1396a(a)(1) that are enforceable in a section 1983 action, I find that their claims are without merit as to an amendment in the state medicaid plan to incorporate the State of Michigan's elimination of its optional OBRA/QMB program.

Section 1316(a)(1) provides for certain time limits within which the Secretary must respond to a state's submission of a plan for approval. With regard to those time limits, however, subsection (b) gives the state the option of submitting amendments as a new state plan or as merely an amendment of the existing state plan. 42 U.S.C. § 1316(b). There is no statutory or regulatory requirement that when a state eliminates from its approved state plan a program, which it had adopted voluntarily, the state must submit for approval a new state plan. Nor does section 1396a(c) imply such a requirement, at least with regard to the elimination of an optional program. *See* discussion of section 1396a(c) *supra.* Moreover, according to legislative history, section 1396a(c) applies to circumstances when the state medicaid plan results in a diversion of funds from AFDC to the medicaid program. Plaintiffs have made no showing that such a diversion of funds from the AFDC program to medicaid has occurred or is taking place. Under the circumstances in this case, AFDC grant levels have been reduced below the levels in effect on May 1, 1988, but also a medicaid program has been *eliminated.* I thus find that section 1396a(c) is not appli-

cable to the amendment submitted for approval of the elimination of the State of Michigan's optional OBRA/QMB program. Accordingly, summary judgment is granted in favor of defendants as to plaintiffs' claims that the elimination of the OBRA/QMB program is a violation of the Social Security Act, 42 U.S.C. § 1396a(a)(1).

*IV. Plaintiffs' Motion for Designation as a Class Action*

 On May 1, 1991, plaintiffs filed a motion for class certification pursuant to Federal Rules of Civil Procedure 23. Plaintiffs sought certification to represent three classes and one subclass. Defendants have indicated that they reviewed the motion and would have stipulated to the certification of the parties as sought by plaintiffs. *See* defendants' letter to the Court, filed May 17, 1991 (dkt. # 42). Plaintiffs later decided that it did not wish to so stipulate in the event that the case was dismissed. Without providing citations, plaintiff indicated to the Court that "the better approach is not to certify the class" should defendants prevail at the dismissal stage. *See* plaintiffs' letter to the Court, filed June 21, 1991 (dkt. # 52).

I have reached the merits of two counts asserted by plaintiffs in this case. Because defendants have agreed to certification of the classes as identified by plaintiffs, I grant plaintiffs' motion for designation as a class action as to the classes relevant to these two counts. Even if defendants had not agreed to the certification, I find that plaintiffs have demonstrated compliance with Rule 23. The classes are so numerous that joinder of all the members would be impracticable; there are questions of fact and law common to all members of the classes; the claims and defenses of the representatives are typical of those of all members; and the representative parties fairly represent the interests of the classes. Fed.R.Civ.P. 23(a). I certify the classes pursuant to Rule 23(b)(2) because defendants have acted on grounds applicable to the classes as a whole, thus making appro-

priate injunctive and declaratory relief as to the entire classes. *Id.* 23(b)(2).