Christine STOWELL, on behalf of herself and all others similarly situated, Plaintiffs,

v.

H. Rollin IVES, in his official capacity as Commissioner of the Maine Department of Human Services, Defendant.

Civ. No. 92-66-P-C.

United States District Court, D. Maine.

March 16, 1992.

James Crotteau, Pine Tree Legal Assistance, Inc., Machias, Me., for Christine Stowell.

Christopher Leighton, Human Services Div., Augusta, Me., David Collins, Asst. U.S. Atty., Portland, Me., Raymond Larizza, Sheila Lieber, Robin Rosenbaum, U.S. Dept. of Justice, Federal Programs Branch, Washington, D.C., for Human Services.

## MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT ON STIPULATED RECORD

GENE CARTER, Chief Judge.

This class action is before the Court by agreement of the parties for a judgment on a stipulated record. Plaintiffs[1] brought suit on February 21, 1992 under 42 U.S.C. § 1983, seeking declaratory and temporary, preliminary and permanent injunctive relief. They allege that regulations promulgated by Defendant pursuant to a new Maine statute permitting Defendant to reduce the standard of need in the Aid to Families with Dependent Children (AFDC) program violate a provision of the Medicaid Act, 42 U.S.C. § 1396a(c)(1), because they reduce the Maine AFDC payment levels for AFDC recipients like Plaintiffs below the levels in effect on May 1, 1988. The regulations were scheduled to go into effect on March 1, 1992.

On February 24, 1992, the Court granted Plaintiffs' Motion for a Temporary Restraining Order. The Court held a conference of counsel on February 27, 1992 at which it proposed ruling on a stipulated record and set an expedited schedule for briefing and further argument. On March 4, Plaintiffs dismissed their claims against the federal Defendant Louis W. Sullivan,

---

1. On March 5, 1992, without objection the Court certified the Plaintiff class as follows:

All families in the State of Maine who would be eligible for AFDC benefits and/or supplemental payments under 42 U.S.C. § 602(a)(28) under the AFDC payment levels

in effect in Maine on May 1, 1988 and who would receive a smaller total AFDC plus supplemental § 602(a)(28) payment under the AFDC payment levels proposed to be effective March 1, 1992 than they would have received under the May 1, 1988 payment levels.

Secretary of the United States Department of Health and Human Services. On March 9, the Court extended the Temporary Restraining Order, granted Secretary Sullivan's motion to appear as *amicus curiae* and heard argument on the issues before it. The parties agreed that Plaintiffs' requests for preliminary and permanent injunctive relief should be merged and that the latter should be decided on the merits.

This Court has recently had the opportunity of describing the workings of the AFDC program in Maine:

> AFDC is a cooperative federal-state program administered by states. It was established to "encourag[e] the care of dependent children ... to help maintain and strengthen family life ... and to help such parents or relatives to attain or retain capability for the maximum self support and personal independence...." 42 U.S.C. § 601. These goals are accomplished "by enabling each State to furnish financial assistance and rehabilitation and other services." *Id.*
>
> States determine the amount of a family's AFDC benefits by subtracting the family's countable income from a state established "standard of need," the amount of money a state determines is necessary for the subsistence of a family of a given size. Most states provide funds equal to the difference between the established standard of need and the family's countable income so that every family has enough funds to meet the standard of need. *Quarles v. St. Clair,* 711 F.2d 691, 694 (5th Cir.1983). DHS [Department of Human Services], however, has established a maximum payment standard that limits the amount of AFDC funds available for any particular family, thus leaving some families with a gap between the AFDC funds available and the amount of money necessary to elevate the family to the standard of need.

*Doucette v. Ives,* 744 F.Supp. 23, 24 (D.Me. 1990), *aff'd in part and rev'd in part,* 947 F.2d 21 (1st Cir.1991).

As the Court went on to explain in *Doucette,* prior to 1975 child support payments to which recipient families were entitled were available to help fill the gap between the funds available to a family and the standard of need. Since 1975, however, federal law mandates that families who receive AFDC funds assign the right to receive such child support payments to the state; the state may retain payments in excess of the child support obligations due in the current month. *Id.* Because of the possibility that state retention of child support payments would cause some families living in so-called "gap" states like Maine to lose income necessary for them to meet the standard of need, "Congress provided that any money retained by the state shall be added to the families' AFDC payments, provided that the monies would not raise a family's income beyond the standard of need. 42 U.S.C. § 602(a)(28)." *Id.* at 25.

Plaintiffs here are a class of Maine individuals who would have been eligible for AFDC benefits and/or supplemental gap payments at a certain level in effect on May 1, 1988 and who would receive a smaller total AFDC plus supplemental gap payment under the regulations challenged here that were set to go into effect on March 1. Plaintiffs allege that the proposed regulations violate section 1396a(c)(1) of the Medicaid Act which provides:

> Notwithstanding subsection (b), the Secretary shall not approve any State plan for medical assistance if—
>
> (1) the State has in effect, under its plan established under part (A) of title IV, payment levels that are less than the payment levels in effect under such plan on May 1, 1988.

The thrust of Plaintiffs' argument is that gap payments under section 602(a)(28) are to be considered AFDC payments. Thus, by lowering the standard of need for AFDC recipients below what it was in May 1988, the new regulations violate section 1396a(c)(1) by in effect lowering the payment level for gap payment recipients even though the state AFDC payment standard remains the same. The State argues that gap payments are not to be considered AFDC payments and thus that the payment level is not lowered by lowering the

standard of need while maintaining a fixed payment standard.

In its *amicus* brief, the Secretary urges the Court not to address the issue as framed by Plaintiffs and Defendant. The Secretary argues instead that Maine's proposed regulations are not illegal because section 1396a(c)(1) by its terms limits only the *Secretary's* power to approve state Medicaid plans submitted for his approval. He points out correctly that the statutory language contains no prohibition on a state's power to reduce AFDC payment levels or its ability to seek or accept federal matching funds under the Medicaid program. The statute clearly states that *"the Secretary* shall not approve any state plan for medical assistance" if the State has reduced AFDC payment levels below the May 1988 level.

Plaintiffs assert that the Secretary's argument runs counter to the long-established Supreme Court teaching that public assistance recipients may bring suit against responsible State officials "when those officials allow their programs to violate federal requirements." Plaintiffs' Memorandum in Support of Motion for Temporary Restraining Order, at 16. The Court recognizes that *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) "held that suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980) (*quoting Edelman v. Jordan,* 415 U.S. 651, 675, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974)). More recently, too, as Plaintiffs point out, the Supreme Court in *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) has specifically reaffirmed the enforceability of certain provisions of the Medicaid Act under § 1983.

The Court has carefully examined the above cases and finds that they do not support Plaintiffs' argument that there exists a private right of action for them to enforce section 1396a(c)(1) against the State. In the cases cited by Plaintiffs, the plaintiffs were seeking relief under statutes that had mandated certain behavior on the part of the States. For example, in *Rosado* the Court described its analysis:

Our chief resources in this undertaking are the words of the statute and those common-sense assumptions that must be made in determining direction without a compass.

Reverting to the language of § 402(a)(23) we find two separate mandates: first, *the States must* reevaluate the component factors that compose their need equation; and, second, any "maximums" *must be* adjusted.

*Rosado,* 397 U.S. at 412, 90 S.Ct. at 1218 (emphasis added). Similarly, in *Wilder,* the Supreme Court found that the Boren Amendment to the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A) is enforceable in an action brought under section 1983. That section of the Medicaid Act provides that

a *State plan* for medical assistance *must* . . .

provide . . . for payment . . . of hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) . . . which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities. . . .

42 U.S.C. § 1396a(a)(13)(A). In *Wilder* the Court specifically stated that "[t]he question in this case is whether the Boren Amendment imposes a 'binding obligation' on the *States* that gives rise to enforceable rights." *Wilder,* 496 U.S. at 510, 110 S.Ct. at 2518, 110 L.Ed.2d at 467 (emphasis added).

Under the plain language of section 1396a(c)(1) there is no " 'binding obligation' on the *States.*" [2] Congress instead man-

**2.** In their reply to the Secretary's *amicus* brief, Plaintiffs cite a number of cases by this Court

and others which restate the basic principle that if States choose to participate in the Medicaid or

dated certain behavior *on the part of the Secretary* in certain circumstances. The structure of the Medicaid Act and of the Social Security Act in general is such that Congress obviously knew how to impose requirements on the States, and it did not do so here.

Plaintiffs argue that the legislative history surrounding the 1988 amendment of section 1396a(c) demonstrates conclusively that that section was meant to impose an obligation upon the states. The House Conference Report states:

> [T]o assure that the resources for mandatory coverage of pregnant women and infants up to 100 percent of poverty are not diverted from the Aid to Families with Dependent Children (AFDC) program, all states are prohibited from reducing their cash assistance payment levels to families with dependent children below the levels in effect on May 1, 1988.

House Conf. Rep. No. 100–661, 100th Cong., 2d Sess 256 (1988), *reprinted in* 1988 U.S.C.C.A.N. 923, 1034. As the court in *Babbitt v. Michigan*, 778 F.Supp. 941, 947 (W.D.Mich.1991), stated, the effect of the amendment was to give states more flexibility in setting AFDC benefit levels than it had had under the previous version. Former section 1396a(c) prohibited the Secretary from approving any State plan for medical assistance if he determined that the approval and operation of the plan would result in a reduction of money payments provided for eligible individuals under an AFDC plan. The purpose of the prior statute was much broader than that expressed for the 1988 amendment, specifically "to prevent any unwarranted diversion of funds from basic maintenance to medical care," S.Rep. No. 404, 89th Cong., 1st Sess., pt. I, at 82–83 (1965), *reprinted in* 1965 U.S.C.C.A.N. 1943, 2023. Neither the new, more restrictive purpose of the 1988 amendment, nor the prohibition on the States also expressed in the legislative history is directly addressed by the statutory language. The Court, therefore, finds the legislative history unhelpful and declines Plaintiffs' invitation to derive from it an unexpressed statutory meaning.

In *Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979), the Supreme Court stated that "the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action." As Chief Justice Rehnquist has more recently pointed out in his dissent in *Wilder:*

> This statement is suggestive of the traditional rule that the first step in our exposition of a statute always is to look to the statute's text and to stop there if the text fully reveals its meaning. *See, e.g., American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) ("'[O]ur starting point must be the language employed by Congress,' and we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'").

*Wilder*, 496 U.S. at 521, 110 S.Ct. at 2526 (Rehnquist, C.J., dissenting).

Plaintiffs have consistently contended that the State regulations complained of here constitute a violation of § 1396a(c)(1). The text of the statute, however, clearly imposes a duty on the Secretary to effectuate through the administrative process Congress's policy concerning the relationship between AFDC payment levels and State Medicaid plans.[3] It equally clearly

---

AFDC programs, they must comply with all requirements imposed by the governing statutes and implementing regulations. *See, e.g., McKenney v. Sullivan*, 743 F.Supp. 53, 63 (D.Me. 1990); *Willey v. Ives*, 696 F.Supp. 1388, 1389 (D.Me.1988). That principle is not applicable here, however, where the governing statute does not impose a requirement on the States.

**3.** The Secretary has suggested in its *amicus* memorandum that his obligation to apply section 1396a(c)(1) comes into play only when the States submit *new* Medicaid plans for approval and that the case is not ripe because Maine, like the other forty-nine states, already has a Medicaid plan in place. Plaintiffs' submissions also indicate that the Secretary's agents may be advising State Departments of Human Services to file *amendments* to existing, approved plans rather than *new* plans in order to avoid the application of the statute.

The Court by this opinion does *not* endorse the Secretary's position on this point and in fact

fails to impose a corresponding duty on the States. As the court said in *Babbitt:* "Section 1396a(c) does not prohibit defendants from reducing AFDC benefits, but merely provides for possible consequences should defendants do so." *Babbitt,* 778 F.Supp. at 947. Thus, not only does section 1396a(c)(1) not impose any obligation upon the States not to reduce payment levels, the general structure of the Acts clearly leaves latitude to the States to do so, provided that they are prepared to suffer the consequences specifically provided for in the statutory structure. Nowhere are the States *prohibited* by the Acts, in the circumstances of this case, from reducing payment levels, even below those in effect on May 1, 1988. The Court finds, therefore, that Plaintiffs are entitled to no relief on the complaint now before the Court.

Accordingly, it is hereby ORDERED that judgment shall enter for Defendant.

SO ORDERED.

finds it facially to be an unappealing manifestation of the byzantine bureaucratic logic often encountered by public assistance recipients in dealing with administrative agencies. Since the Secretary is not a party to this action and the issue has not been clearly presented, the Court offers no suggestion concerning the manner in which issues concerning section 1396a(c)(1) should be handled in the administrative process.