USCA1 Opinion

 

 September 28, 1992 _________________________ No. 92-1342 CHRISTINE STOWELL, ETC., ET AL., Plaintiffs, Appellants, v. H. ROLLIN IVES, ETC., Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ _________________________ James R. Crotteau, with whom Pine Tree Legal Assistance, __________________ ____________________________ Inc. was on brief, for appellants. ____ J. Paterson Rae and Hugh Calkins on joint brief for Robert _______________ ____________ Avanzato, Michelle Turcotte, Maine Civil Liberties Union, and Maine Chapter of the National Organization for Women, amici curiae (in support of the appeal). Christopher C. Leighton, Deputy Attorney General, State of _______________________ Maine, with whom Michael E. Carpenter, Attorney General, and _____________________ Thomas D. Warren, Deputy Attorney General, were on brief, for _________________ appellee. Richard A. Olderman, Attorney, Appellate Staff, Civil ______________________ Division, U.S. Dept. of Justice, with whom Stuart M. Gerson, _________________ Assistant Attorney General, Barbara C. Biddle, Attorney, ____________________ Appellate Staff, and Richard S. Cohen, United States Attorney, _________________ were on brief, for the United States, amicus curiae (in support of the judgment below). _________________________ _________________________ SELYA, Circuit Judge. Once the wheat is shaken from SELYA, Circuit Judge. _____________ the chaff, this apparently complex appeal can be resolved by deciding a threshold question (albeit one that has not previously been confronted by the courts of appeals). Consequently, we affirm the district court's entry of judgment for the defendant on the basis that a recipient of benefits under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. 601-615 (1988 & Supp. I 1989), cannot bring an action pursuant to 42 U.S.C. 1983 (1988) to enforce the terms of 42 U.S.C. 1396a(c)(1) (1988). I. BACKGROUND I. BACKGROUND Since this matter turns on a discrete question of redressability, our burden of exegesis is considerably reduced. We content ourselves, therefore, with sketching the contours of the preliminary inquiry, forgoing detailed exposition of the facts and substantive issues. We start with section 1396a(c)(1), a statute enacted on July 1, 1988 as part of the Medicare Catastrophic Coverage Act. The statute reads in pertinent part: [T]he Secretary [of the United States Department of Health and Human Services] shall not approve any State plan for medical assistance if (1) the State has in effect [AFDC] payment levels that are less than the payment levels in effect under such plan on May 1, 1988. 42 U.S.C. 1396a(c)(1). On February 21, 1992, Christine Stowell brought suit for declaratory and injunctive relief in Maine's federal district 2 court. She invoked 42 U.S.C. 1983, named a Maine state official as a defendant,1 and claimed that Maine had violated section 1396a(c)(1). The claim rested on the premise that economy measures implemented by the Maine legislature had gone too far, resulting in a de facto reduction of AFDC payment levels __ _____ below those in effect on May 1, 1988. The State contested Stowell's standing to sue and, moreover, asserted that payment levels had been increased rather than decreased.2 On Stowell's motion, the trial court certified a plaintiff class which it described as follows: All families in the State of Maine who would be eligible for AFDC benefits and/or supplemental payments under 42 U.S.C. 602(a)(28) under the AFDC payment levels in effect in Maine on May 1, 1988 and who would receive a smaller total AFDC plus supplemental 602(a)(28) payment under the AFDC payment levels proposed to be effective March 1, 1992 than they would have received under the May 1, 1988 payment levels. Stowell v. Ives, 788 F. Supp. 40, 40 n.1 (D. Me. 1992). _______ ____ In time, the case was submitted to the district court ____________________ 1Stowell sued H. Rollin Ives, in his capacity as Commissioner of the Maine Department of Human Services. Since Maine is the real party in interest, we will sometimes refer to Ives as "the State." Stowell also sued a federal official, the Secretary of the Department of Health and Human Services ("Secretary"). However, she dropped the Secretary from the case prior to the entry of judgment below. Thus, although the Secretary filed an amicus brief and argued before us in support of the judgment, he is not a party to this appeal. 2The parties' differing views as to the practical effect of Maine's regulations stem from their differing interpretations of the term "payment levels." See Stowell v. Ives, 788 F. Supp. 40, ___ _______ ____ 41-42 (D. Me. 1992). Because we do not reach the merits, we express no opinion on the proper resolution of this interpretive conundrum. 3 on a stipulated record. The court ruled that the amended complaint failed to state a cause of action cognizable under section 1983. Id. at 44. This appeal ensued. ___ II. DISCUSSION II. DISCUSSION Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. 1983.3 A prospective plaintiff may bring suit under section 1983 not only for a state actor's violation of his or her constitutional rights but also to enforce federal statutory law in the face of infringing state officialdom. See Maine v. Thiboutot, 448 U.S. ___ _____ _________ 1, 4-8 (1980). Nevertheless, not every violation of federal law gives rise to a section 1983 claim. See Golden State Transit Corp. v. ___ __________________________ Los Angeles, 493 U.S. 103, 106 (1989). Exceptions include ____________ situations where "Congress has foreclosed such enforcement . . . in the enactment itself" or where "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of 1983." Suter v. Artist M., 112 S. Ct. 1360, 1366 (1992) _____ __________ (quoting Wright v. Roanoke Redevelopment & Housing Auth., 479 ______ _______________________________________ U.S. 418, 423 (1987)); accord Wilder v. Virginia Hosp. Ass'n, 496 ______ ______ ____________________ U.S. 498, 508 (1990). Because 42 U.S.C. 1396a(c)(1) does not expressly outlaw section 1983 actions, the first of these exceptions is inapposite here. Accordingly, we focus the lens of ____________________ 3For ease in reference, we will henceforth use "rights" as a shorthand abbreviation for "rights, privileges, or immunities." 4 our perlustration on the second exception, bent on determining to what extent (if at all) section 1396a(c)(1) creates any enforceable rights. A. A. __ Prior to 1992, cases such as Wilder v. Virginia Hosp. ______ _______________ Ass'n, 479 U.S. 418 (1990), Pennhurst State School & Hosp. v. _____ _______________________________ Halderman, 451 U.S. 1 (1981), and Rosado v. Wyman, 397 U.S. 397 _________ ______ _____ (1970), guided judicial inquiry into whether a federal law did, or did not, create a right falling within the ambit of section 1983. Under that framework, a court's first duty was to satisfy itself that "the [statutory] provision in question was intend[ed] to benefit the putative plaintiff." Wilder, 496 U.S. at 509 ______ (citations and internal quotation marks omitted). If no such benefit could be gleaned, the court's inquiry ended. If, however, the court perceived an intended benefit, then it was bound to find that the provision created an enforceable right unless one of two conditions obtained: either (1) the statute, fairly read, "reflect[ed] merely a congressional preference for a certain kind of conduct rather than a binding obligation on the governmental unit," or (2) the interest asserted by the putative plaintiff was so "vague and amorphous" that enforcement would be "beyond the competence of the judiciary. . . ." Id. (citations ___ and internal quotation marks omitted). Accord Playboy Enters., ______ ________________ Inc. v. Public Serv. Comm'n, 906 F.2d 25, 32 (1st Cir.), cert. ____ ____________________ _____ denied, 111 S. Ct. 388 (1990). ______ 5 During the last term, the old regime fell on hard times. The Court decided Suter, 112 S. Ct. 1360, a case which _____ shed new light on this fuliginous area of the law. Although some respected jurists believe that Suter effected a sea change in the _____ Court's approach to section 1983, e.g., id. at 1371 (Blackmun, ____ ___ J., dissenting) ("In my view, the [rationale of the Suter _____ majority] is plainly inconsistent with this Court's decision just two years ago in Wilder . . . ."), we think it is much too early ______ to post epitaphs for Wilder and its kin. For one thing, Suter ______ _____ offered no analytic framework to replace the structure erected in the Court's previous decisions. For another thing, the Suter _____ Court, while weakening earlier precedents in certain important respects, was careful not explicitly to overrule them. Indeed, the majority relied on those precedents as pertinent authority. See, e.g., Suter, 112 S. Ct. at 1366-68 (citing, inter alia, ___ ____ _____ _____ ____ Wilder, Pennhurst, and Wright). Because we believe that it is ______ _________ ______ both prudent and possible to synthesize the teachings of Suter _____ with the Court's prior precedents, we examine appellants' claims under the Wilder framework as reconfigured by the neoteric ______ principles announced in Suter. _____ B. B. __ AFDC and Medicaid, 42 U.S.C. 1396-1396u (1988 & Supp. I 1989), as amended by Acts of Nov. 5, 1990 and Dec. 19, __ _______ __ 1989, 42 U.S.C.S. 1396-1396u (Law. Co-op. Supp. 1992), the programs at issue here, are part of the Social Security Act. Both endeavors represent examples of cooperative federal-state 6 social service programs which, though federally funded in whole or in part, are administered by the States. See Alexander v. ___ _________ Choate, 469 U.S. 287, 289 n.1 (1985) (Medicaid); Doucette v. ______ ________ Ives, 947 F.2d 21, 23 (1st Cir. 1991) (AFDC). "Although ____ participation in [such programs] is voluntary, participating States must comply with certain requirements imposed by the [federal statutes] and regulations promulgated by the Secretary of Health and Human Services." Wilder, 496 U.S. at 502; see also ______ ___ ____ King v. Smith, 392 U.S. 309, 316 (1968). ____ _____ To be sure, "the Supreme Court has implicitly and explicitly held that rights under various provisions of the Social Security Act are enforceable under section 1983." Lynch _____ v. Dukakis, 719 F.2d 504, 510 (1st Cir. 1983). But that _______ generality, without more, does not boost the appellants' stock. Suter reminded us that each provision of the Social Security Act _____ "must be interpreted by its own terms." Suter, 112 S. Ct. at _____ 1367 n.8. In performing this tamisage, the abecedarian principle is that statutory interpretation always starts with the language of the statute itself. Pennsylvania Dep't of Pub. Welfare v. ___________________________________ Davenport, 495 U.S. 552, 557-58 (1990); Consumer Prod. Safety _________ ______________________ Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). A court ______ __________________ should "assum[e] that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose," see ___ Morales v. Trans World Airlines, Inc., 112 S. Ct. 2031, 2036 _______ ____________________________ (1992), and should "resort to the legislative history and other aids of statutory construction only when the literal words of the 7 statute create ambiguity or lead to an unreasonable result." United States v. Charles George Trucking Co., 823 F.2d 685, 688 _____________ ____________________________ (1st Cir. 1987) (citation and internal quotation marks omitted); accord Barnhill v. Johnson, 112 S. Ct. 1386, 1391 (1992); Toibb ______ ________ _______ _____ v. Radloff, 111 S. Ct. 2197, 2200 (1991). _______ We discern no ambiguity here. In order to establish the existence of a right redressable under section 1983, a plaintiff must allege that a particular statute (or federal constitutional provision) imposes an obligation upon the State. See Wilder, 498 U.S. at 509-10; Pennhurst, 451 U.S. at 19; ___ ______ _________ Playboy Enters., 906 F.2d at 32. This statute imposes none. ________________ Rather, it simply and forthrightly provides, in haec verba, that ____ _____ "the Secretary shall not approve any State plan for medical assistance" if the State has reduced AFDC payment levels below the level prevailing on May 1, 1988. 42 U.S.C. 1396a(c)(1). By its express terms, section 1396a(c)(1) obliges the federal government, in the person of the Secretary of Health and Human Services not the State to take action. The statute could scarcely be clearer. Moreover, there is nothing unreasonable about Congress's choosing to work its will in this way. States are not obligated by federal law to sponsor medical assistance plans or to accept federal funds for this purpose. See 42 U.S.C. 1396 ___ (1988); see also Wilder, 496 U.S. at 502. Thus, section ___ ____ ______ 1396a(c)(1), without mentioning state officials at all, effectively gives them a choice: they may either maintain AFDC 8 benefits at or above the May 1, 1988 payment levels, or they may reduce benefits. If they choose the former course and we emphasize, at this juncture, that Maine adamantly insists that it has maintained (or increased) AFDC payment levels the State's medical assistance plan retains eligibility for continued federal funding. If state officials choose the latter course, however, continued federal funding will be jeopardized. In that event, it becomes the Secretary's task, in due season, to implement Congress's directive by withholding approval of the State's medical assistance plan. The State's role under the statute is purely procedural. Phrased another way, section 1396a(c)(1) provides incentives not commands to the States. That Congress would name a federal intermediary (the Secretary) to implement these federally created incentives is not surprising. The potential reasons for such a delegation are multifarious. They include the advantage of uniform interpretation, the yen to develop and harness administrative expertise in the area, and the desirability of maintaining an agent capable of face-to-face discussions with state officials. Structuring the statute in this fashion may neither suit plaintiffs' preference nor advance their litigating position but there is nothing unreasonable, absurd, or irrational about the model. In a nutshell, then, a straightforward reading of the statutory text ends this case. In Suter, the Court held that an _____ intended recipient of programmatic benefits could not sue under 9 section 1983 if the federal statute merely required that the State submit a plan to a federal agency satisfying certain criteria, because such a "requirement only goes so far as to ensure that the State have a plan approved by the Secretary which contains [the listed criteria]." Suter, 112 S. Ct. at 1367.4 _____ Thus, Suter instructs that, when a provision in a statute fails _____ to impose a direct obligation on the States, instead placing the onus of compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish. Compare Clifton v. Schafer, ___ F.2d _______ _______ _______ ___, ___ (7th Cir. 1992) [1992 WL 164048 at *6-*7] (adopting substantially identical view of Wilder/Suter interface in ______ _____ delineating scope of AFDC recipient's right to sue under section 1983 in order to enforce provisions of 42 U.S.C. 602(a)(4) (1988)). So it is here. C. C. __ Our holding today finds additional support in a line of cases dealing with a closely related issue: implied private rights of action. We are cognizant that the tests utilized in ascertaining whether a section 1983 cause of action exists and those utilized in determining the propriety of an implied right of action are "analytically distinct." See Playboy Enters, 906 ___ ______________ ____________________ 4In order to facilitate comparison with the statutory provision before us today, we note that 42 U.S.C. 671(a), the statute which was before the Suter Court, read as follows: "In _____ order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which" satisfies certain criteria. 10 F.2d at 31. However, these two legal theories bear a family resemblance. See Victorian v. Miller, 813 F.2d 718, 720 n.3 (5th ___ _________ ______ Cir. 1987) ("Section 1983 . . . allows private parties to enforce federal laws against a special class of defendants state and municipal actors in much the same way that implied rights of action permit private enforcement of federal statutory obligations against any party, public or private."); Samuels v. _______ District of Columbia, 770 F.2d 184, 194 (D.C. Cir. 1985) ______________________ (similar); Polchowski v. Gorris, 714 F.2d 749, 751 (7th Cir. __________ ______ 1983) (stating that the inquiry concerning a putative cause of action under section 1983 "resembles the analysis used to determine whether a private cause of action may be implied from an enactment of Congress"); see also Wilder, 496 U.S. at 526 ___ ____ ______ (Rehnquist, C.J., dissenting) (remarking on the "significant area of overlap" between the two theories).5 In the context of implied rights of action, the Supreme Court has held that "there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefitted class,' instead has framed the statute simply ____________________ 5The major difference between the two doctrines concerns the way in which Congress's intent must be manifested. There is a presumption against implied rights of action a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent. The presumption works exactly the other way in the section 1983 milieu; it is assumed that Congress meant to allow such suits an assumption which persists unless the defendant musters adequate evidence of Congress's prohibitory intent. See Victorian, 813 F.2d at 721; Samuels, 770 F.2d at ___ _________ _______ 194; Boatowners & Tenants Ass'n, Inc. v. Port of Seattle, 716 __________________________________ ________________ F.2d 669, 674 (9th Cir. 1983). 11 as a . . . command to a federal agency." Universities Research _____________________ Ass'n, Inc. v. Coutu, 450 U.S. 754, 772 (1981) (quoting Cannon v. ___________ _____ ______ University of Chicago, 441 U.S. 677, 690-92 (1979)). The Seventh _____________________ Circuit has transposed this reasoning to section 1983 claims. See Polchowski, 714 F.2d at 751. We think the soil is hospitable ___ __________ to such transplantation. A statute does not create rights redressable under section 1983 when it is essentially administrative in nature and imposes an obligation exclusively upon federal officials, not upon state actors. D. __ Though their craft is irreparably holed, appellants struggle gamely to stay afloat. We briefly address their more buoyant authorities. First and foremost, appellants cling tenaciously to a footnoted example of the Suter Court. See _____ ___ Suter, 112 S. Ct. at 1369 n.12. But, had appellants looked _____ closely, they would have discerned that, from their standpoint, footnote 12 is more a hungry shark than a life raft. In this respect, appellants' argument hinges on their attempt to analogize section 1396a(c)(1) to 42 U.S.C. 672(e) a statute identified by the Court as the sort of statutory provision that would support a section 1983 action. Suter, 112 _____ S. Ct. at 1369 n.12. In point of fact, section 1396a(c)(1) is identical, in relevant respects, not to section 672(e) but to section 671(a)(15) the statutory provision that the Suter _____ Court, in footnote 12, was contrasting with section 672(e). The ___________ Court deemed it noteworthy that section 671(a)(15) requires 12 "submission of a plan to be approved by the Secretary" while section 672(e) provides that "[n]o Federal payment may be made" unless certain conditions are met. Id. In other words, the ___ Suter Court distinguished between cases in which, on the one _____ hand, a statutory provision is, in effect, a communication to a specific federal official whose approval is required prior to disbursement of federal funds (section 671(a)(15)), and cases in which, on the other hand, a statutory provision is, in effect, a communication from Congress to those States that elect to apply for earmarked funds (section 672(e)). Provisions of the former sort such as those at issue here and in Suter will not _____ support a section 1983 action. The other authorities cited by appellants to buttress their contention that a right enforceable under section 1983 is inherent in section 1396a(c)(1) are equally inapposite. Without exception, those cases concern statutes that pin hard-and-fast obligations on the States. In Wilder, for example, the Court ______ concluded that the Boren Amendment, 42 U.S.C. 1396a(a)(13)(A), could support the maintenance of a section 1983 action. But, as the Wilder Court found, the Boren Amendment requires States ______ participating in the Medicaid program to devise reimbursement rates vis-a-vis health-care providers which "the State finds are reasonable and adequate" to meet the cost which must be incurred by efficiently and economically operated facilities. Wilder, 496 ______ 13 U.S. at 512 (quoting previous version of 42 U.S.C. 1396a(a)(13)(A)).6 Similarly, in Rosado, the Court dealt with a ______ statutory provision that mandated the States to reevaluate their need equations and adjust levels of need accordingly. See ___ Rosado, 397 U.S. at 412. As we have explained, no comparable ______ obligation is imposed on the States by section 1396a(c)(1). III. CONCLUSION III. CONCLUSION We need go no further. Having pegged our analysis of this case on the Wilder framework, visualized through the Suter ______ _____ prism, we conclude that, because the Secretary is the only government official, federal or state, directly bound by the requirements of section 1396a(c)(1), appellants cannot bring their suit within the ambit of section 1983. Affirmed. Affirmed. ________ ____________________ 6The earlier version, 42 U.S.C. 1396a(a)(13)(A) (1982 ed., Supp. V), mirrors the present version in all respects material to the case at hand. 14