Christine STOWELL, etc., et al., Plaintiffs, Appellants,

v.

H. Rollin IVES, etc., Defendant, Appellee.

No. 92–1342.

United States Court of Appeals, First Circuit.

Heard July 30, 1992.

Decided Sept. 28, 1992.

James R. Crotteau, with whom Pine Tree Legal Assistance, Inc., Machias, Me., was on brief, for appellants.

J. Paterson Rae, Springfield, Mass., and Hugh Calkins, Portland, Me., on joint brief, for Robert Avanzato, Michelle Turcotte, Maine Civil Liberties Union, and Maine Chapter of the Nat. Organization for Women, amici curiae (in support of the appeal).

Christopher C. Leighton, Deputy Atty. Gen., State of Me., with whom Michael E. Carpenter, Atty. Gen., and Thomas D. Warren, Deputy Atty. Gen., Augusta, Me., were on brief, for appellee.

Richard A. Olderman, Atty., Appellate Staff, Civil Div., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Barbara C. Biddle, Atty., Appellate Staff, Washington, D.C., and Richard S. Cohen, U.S. Atty., Augusta, Me., were on brief, for U.S., amicus curiae (in support of the judgment below).

Before SELYA, CYR and STAHL, Circuit Judges.

SELYA, Circuit Judge.

Once the wheat is shaken from the chaff, this apparently complex appeal can be resolved by deciding a threshold question (albeit one that has not previously been confronted by the courts of appeals). Consequently, we affirm the district court's entry of judgment for the defendant on the basis that a recipient of benefits under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. §§ 601–615 (1988 & Supp. I 1989), cannot bring an action pursuant to 42 U.S.C. § 1983 (1988) to enforce the terms of 42 U.S.C. § 1396a(c)(1) (1988).

## I. BACKGROUND

Since this matter turns on a discrete question of redressability, our burden of exegesis is considerably reduced. We content ourselves, therefore, with sketching the contours of the preliminary inquiry,

forgoing detailed exposition of the facts and substantive issues.

We start with section 1396a(c)(1), a statute enacted on July 1, 1988 as part of the Medicare Catastrophic Coverage Act. The statute reads in pertinent part:

> [T]he Secretary [of the United States Department of Health and Human Services] shall not approve any State plan for medical assistance if—
>
> (1) the State has in effect [AFDC] payment levels that are less than the payment levels in effect under such plan on May 1, 1988.

42 U.S.C. § 1396a(c)(1).

On February 21, 1992, Christine Stowell brought suit for declaratory and injunctive relief in Maine's federal district court. She invoked 42 U.S.C. § 1983, named a Maine state official as a defendant,[1] and claimed that Maine had violated section 1396a(c)(1). The claim rested on the premise that economy measures implemented by the Maine legislature had gone too far, resulting in a *de facto* reduction of AFDC payment levels below those in effect on May 1, 1988. The State contested Stowell's standing to sue and, moreover, asserted that payment levels had been increased rather than decreased.[2] On Stowell's motion, the trial court certified a plaintiff class which it described as follows:

> All families in the State of Maine who would be eligible for AFDC benefits and/or supplemental payments under 42 U.S.C. § 602(a)(28) under the AFDC payment levels in effect in Maine on May 1, 1988 and who would receive a smaller total AFDC plus supplemental § 602(a)(28) payment under the AFDC payment levels proposed to be effective March 1, 1992 than they would have re-

ceived under the May 1, 1988 payment levels.

*Stowell v. Ives,* 788 F.Supp. 40, 40 n. 1 (D.Me.1992).

In time, the case was submitted to the district court on a stipulated record. The court ruled that the amended complaint failed to state a cause of action cognizable under section 1983. *Id.* at 44. This appeal ensued.

## II. DISCUSSION

Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983.[3] A prospective plaintiff may bring suit under section 1983 not only for a state actor's violation of his or her constitutional rights but also to enforce federal statutory law in the face of infringing state officialdom. *See Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–2506, 65 L.Ed.2d 555 (1980).

Nevertheless, not every violation of federal law gives rise to a section 1983 claim. *See Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). Exceptions include situations where "Congress has foreclosed such enforcement ... in the enactment itself" or where "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983." *Suter v. Artist M.,* — U.S. —, —, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)); *accord Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510,

---

**1.** Stowell sued H. Rollin Ives, in his capacity as Commissioner of the Maine Department of Human Services. Since Maine is the real party in interest, we will sometimes refer to Ives as "the State." Stowell also sued a federal official, the Secretary of the Department of Health and Human Services ("Secretary"). However, she dropped the Secretary from the case prior to the entry of judgment below. Thus, although the Secretary filed an amicus brief and argued before us in support of the judgment, he is not a party to this appeal.

**2.** The parties' differing views as to the practical effect of Maine's regulations stem from their differing interpretations of the term "payment levels." *See Stowell v. Ives,* 788 F.Supp. 40, 41–42 (D.Me.1992). Because we do not reach the merits, we express no opinion on the proper resolution of this interpretive conundrum.

**3.** For ease in reference, we will henceforth use "rights" as a shorthand abbreviation for "rights, privileges, or immunities."

2517, 110 L.Ed.2d 455 (1990). Because 42 U.S.C. § 1396a(c)(1) does not expressly outlaw section 1983 actions, the first of these exceptions is inapposite here. Accordingly, we focus the lens of our perlustration on the second exception, bent on determining to what extent (if at all) section 1396a(c)(1) creates any enforceable rights.

### A.

Prior to 1992, cases such as *Wilder, Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), guided judicial inquiry into whether a federal law did, or did not, create a right falling within the ambit of section 1983. Under that framework, a court's first duty was to satisfy itself that "the [statutory] provision in question was intend[ed] to benefit the putative plaintiff." *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (citations and internal quotation marks omitted). If no such benefit could be gleaned, the court's inquiry ended. If, however, the court perceived an intended benefit, then it was bound to find that the provision created an enforceable right unless one of two conditions obtained: either (1) the statute, fairly read, "reflect[ed] merely a congressional preference for a certain kind of conduct rather than a binding obligation on the governmental unit," or (2) the interest asserted by the putative plaintiff was so "vague and amorphous" that enforcement would be "beyond the competence of the judiciary...." *Id.* (citations and internal quotation marks omitted). *Accord Playboy Enters., Inc. v. Public Serv. Comm'n*, 906 F.2d 25, 32 (1st Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).

During the last term, the old regime fell on hard times. The Court decided *Suter*, — U.S. ——, 112 S.Ct. 1360, a case which shed new light on this fuliginous area of the law. Although some respected jurists believe that *Suter* effected a sea change in the Court's approach to section 1983, *e.g., id.* at ——, 112 S.Ct. at 1371 (Blackmun, J., dissenting) ("In my view, the [rationale of

the *Suter* majority] is plainly inconsistent with this Court's decision just two years ago in *Wilder....*"), we think it is much too early to post epitaphs for *Wilder* and its kin. For one thing, *Suter* offered no analytic framework to replace the structure erected in the Court's previous decisions. For another thing, the *Suter* Court, while weakening earlier precedents in certain important respects, was careful not explicitly to overrule them. Indeed, the majority relied on those precedents as pertinent authority. *See, e.g., Suter*, at —— ——, 112 S.Ct. at 1366–68 (citing, *inter alia, Wilder, Pennhurst,* and *Wright*). Because we believe that it is both prudent and possible to synthesize the teachings of *Suter* with the Court's prior precedents, we examine appellants' claims under the *Wilder* framework as reconfigured by the neoteric principles announced in *Suter*.

### B.

■ AFDC and Medicaid, 42 U.S.C. §§ 1396–1396u (1988 & Supp. I 1989), *as amended by* Acts of Nov. 5, 1990 and Dec. 19, 1989, 42 U.S.C.S. §§ 1396–1396u (Law. Co-op. Supp.1992), the programs at issue here, are part of the Social Security Act. Both endeavors represent examples of co-operative federal-state social service programs which, though federally funded in whole or in part, are administered by the States. *See Alexander v. Choate*, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985) (Medicaid); *Doucette v. Ives*, 947 F.2d 21, 23 (1st Cir.1991) (AFDC). "Although participation in [such programs] is voluntary, participating States must comply with certain requirements imposed by the [federal statutes] and regulations promulgated by the Secretary of Health and Human Services." *Wilder*, 496 U.S. at 502, 110 S.Ct. at 2513; *see also King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968).

To be sure, "the Supreme Court has implicitly and explicitly held that rights under various provisions of the Social Security Act are enforceable under section 1983." *Lynch v. Dukakis*, 719 F.2d 504, 510 (1st Cir.1983). But that generality, without

more, does not boost the appellants' stock. *Suter* reminded us that each provision of the Social Security Act "must be interpreted by its own terms." *Suter,* —— .U.S. at —— n. 8, 112 S.Ct. at 1367 n. 8. In performing this tamisage, the abecedarian principle is that statutory interpretation always starts with the language of the statute itself. *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). A court should "assum[e] that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose," *see Morales v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992), and should "resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable result." *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir.1987) (citation and internal quotation marks omitted); *accord Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992); *Toibb v. Radloff,* —— U.S. ——, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991).

We discern no ambiguity here. In order to establish the existence of a right redressable under section 1983, a plaintiff must allege that a particular statute (or federal constitutional provision) imposes an obligation upon the State. *See Wilder,* 496 U.S. at 509–10, 110 S.Ct. at 2517–18; *Pennhurst,* 451 U.S. at 19, 101 S.Ct. at 1541; *Playboy Enters.,* 906 F.2d at 32. This statute imposes none. Rather, it simply and forthrightly provides, in *haec verba,* that "the Secretary shall not approve any State plan for medical assistance" if the State has reduced AFDC payment levels below the level prevailing on May 1, 1988. 42 U.S.C. § 1396a(c)(1). By its express terms, section 1396a(c)(1) obliges the federal government, in the person of the Secretary of Health and Human Services—not the State—to take action. The statute could scarcely be clearer.

Moreover, there is nothing unreasonable about Congress's choosing to work its will in this way. States are not obligated by federal law to sponsor medical assistance plans or to accept federal funds for this purpose. *See* 42 U.S.C. § 1396 (1988); *see also Wilder,* 496 U.S. at 502, 110 S.Ct. at 2513. Thus, section 1396a(c)(1), without mentioning state officials at all, effectively gives them a choice: they may either maintain AFDC benefits at or above the May 1, 1988 payment levels, or they may reduce benefits. If they choose the former course—and we emphasize, at this juncture, that Maine adamantly insists that it has maintained (or increased) AFDC payment levels—the State's medical assistance plan retains eligibility for continued federal funding. If state officials choose the latter course, however, continued federal funding will be jeopardized. In that event, it becomes the Secretary's task, in due season, to implement Congress's directive by withholding approval of the State's medical assistance plan. The State's role under the statute is purely procedural.

Phrased another way, section 1396a(c)(1) provides incentives—not commands—to the States. That Congress would name a federal intermediary (the Secretary) to implement these federally created incentives is not surprising. The potential reasons for such a delegation are multifarious. They include the advantage of uniform interpretation, the yen to develop and harness administrative expertise in the area, and the desirability of maintaining an agent capable of face-to-face discussions with state officials. Structuring the statute in this fashion may neither suit plaintiffs' preference nor advance their litigating position—but there is nothing unreasonable, absurd, or irrational about the model.

■ In a nutshell, then, a straightforward reading of the statutory text ends this case. In *Suter,* the Court held that an intended recipient of programmatic benefits could not sue under section 1983 if the federal statute merely required that the State submit a plan to a federal agency satisfying certain criteria, because such a "requirement only goes so far as to ensure

that the State have a plan approved by the Secretary which contains [the listed criteria]." *Suter,* — U.S. at —, 112 S.Ct. at 1367.[4] Thus, *Suter* instructs that, when a provision in a statute fails to impose a direct obligation on the States, instead placing the onus of compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish. *Compare Clifton v. Schafer,* 969 F.2d 278, 283–85 (7th Cir.1992) (adopting substantially identical view of *Wilder/Suter* interface in delineating scope of AFDC recipient's right to sue under section 1983 in order to enforce provisions of 42 U.S.C. § 602(a)(4) (1988)). So it is here.

### C.

Our holding today finds additional support in a line of cases dealing with a closely related issue: implied private rights of action. We are cognizant that the tests utilized in ascertaining whether a section 1983 cause of action exists and those utilized in determining the propriety of an implied right of action are "analytically distinct." *See Playboy Enters,* 906 F.2d at 31. However, these two legal theories bear a family resemblance. *See Victorian v. Miller,* 813 F.2d 718, 720 n. 3 (5th Cir.1987) ("Section 1983 ... allows private parties to enforce federal laws against a special class of defendants—state and municipal actors—in much the same way that implied rights of action permit private enforcement of federal statutory obligations against any party, public or private."); *Samuels v. District of Columbia,* 770 F.2d 184, 194 (D.C.Cir.1985) (similar); *Polchowski v. Gorris,* 714 F.2d 749, 751 (7th Cir.1983) (stating that the inquiry concerning a putative cause of action under section 1983 "resembles the analysis used to determine whether a private cause of action may be implied from an enactment of Congress"); *see also Wilder,* 496 U.S. at 526, 110 S.Ct. at 2526 (Rehnquist, C.J., dissenting) (remarking on the "significant area of overlap" between the two theories).[5]

In the context of implied rights of action, the Supreme Court has held that "there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefitted class,' instead has framed the statute simply as a ... command to a federal agency." *Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1979)). The Seventh Circuit has transposed this reasoning to section 1983 claims. *See Polchowski,* 714 F.2d at 751. We think the soil is hospitable to such transplantation. A statute does not create rights redressable under section 1983 when it is essentially administrative in nature and imposes an obligation exclusively upon federal officials, not upon state actors.

### D.

Though their craft is irreparably holed, appellants struggle gamely to stay afloat. We briefly address their more buoyant authorities. First and foremost, appellants cling tenaciously to a footnoted example of the *Suter* Court. *See Suter,* — U.S. at — n. 12, 112 S.Ct. at 1369 n. 12. But, had appellants looked closely, they would have discerned that, from their standpoint,

---

**4.** In order to facilitate comparison with the statutory provision before us today, we note that 42 U.S.C. § 671(a), the statute which was before the *Suter* Court, read as follows: "In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which" satisfies certain criteria.

**5.** The major difference between the two doctrines concerns the way in which Congress's intent must be manifested. There is a presumption against implied rights of action—a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent. The presumption works exactly the other way in the section 1983 milieu; it is assumed that Congress meant to allow such suits—an assumption which persists unless the defendant musters adequate evidence of Congress's prohibitory intent. *See Victorian,* 813 F.2d at 721; *Samuels,* 770 F.2d at 194; *Boatowners & Tenants Ass'n, Inc. v. Port of Seattle,* 716 F.2d 669, 674 (9th Cir.1983).

footnote 12 is more a hungry shark than a life raft.

In this respect, appellants' argument hinges on their attempt to analogize section 1396a(c)(1) to 42 U.S.C. § 672(e)—a statute identified by the Court as the sort of statutory provision that would support a section 1983 action. *Suter*, at —— n. 12, 112 S.Ct. at 1369 n. 12. In point of fact, section 1396a(c)(1) is identical, in relevant respects, not to section 672(e) but to section 671(a)(15)—the statutory provision that the *Suter* Court, in footnote 12, was *contrasting* with section 672(e). The Court deemed it noteworthy that section 671(a)(15) requires "submission of a plan to be approved by the Secretary" while section 672(e) provides that "[n]o Federal payment may be made" unless certain conditions are met. *Id.* In other words, the *Suter* Court distinguished between cases in which, on the one hand, a statutory provision is, in effect, a communication to a specific federal official whose approval is required prior to disbursement of federal funds (section 671(a)(15)), and cases in which, on the other hand, a statutory provision is, in effect, a communication from Congress to those States that elect to apply for earmarked funds (section 672(e)). Provisions of the former sort—such as those at issue here and in *Suter*—will not support a section 1983 action.

The other authorities cited by appellants to buttress their contention that a right enforceable under section 1983 is inherent in section 1396a(c)(1) are equally inapposite. Without exception, those cases concern statutes that pin hard-and-fast obligations on the States. In *Wilder*, for example, the Court concluded that the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A), could support the maintenance of a section 1983 action. But, as the *Wilder* Court found, the Boren Amendment requires States participating in the Medicaid program to devise reimbursement rates vis-a-vis healthcare providers which "the State finds are reasonable and adequate" to meet the cost which must be incurred by efficiently and economically operated facilities. *Wilder*, 496 U.S. at 512, 110 S.Ct. at 2519 (quoting previous version of 42 U.S.C. § 1396a(a)(13)(A)).[6] Similarly, in *Rosado*, the Court dealt with a statutory provision that mandated the States to reevaluate their need equations and adjust levels of need accordingly. *See Rosado*, 397 U.S. at 412, 90 S.Ct. at 1218. As we have explained, no comparable obligation is imposed on the States by section 1396a(c)(1).

### III. CONCLUSION

We need go no further. Having pegged our analysis of this case on the *Wilder* framework, visualized through the *Suter* prism, we conclude that, because the Secretary is the only government official, federal or state, directly bound by the requirements of section 1396a(c)(1), appellants cannot bring their suit within the ambit of section 1983.

*Affirmed.*

---

**6.** The earlier version, 42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V), mirrors the present version in all respects material to the case at hand.