Erick **CARABALLO SEDA**, et al., Plaintiffs,

v.

Francisco **JAVIER RIVERA**, et al., Defendants.

Civ. No. 01–1446(JAG).

United States District Court, D. Puerto Rico.

May 9, 2003.

Pablo Landrau–Pirazzi, Ivan M. Castro–Ortiz, Eliezer Aldarondo–Ortiz, Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for plaintiffs.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Jacqueline N. Font–Guzman, Grisselle Gonzalez–Negron, Faccio & Pabon Roca, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On December 20, 2001, plaintiffs employees of the Southwestern Consortium [1] ("the Consortium"), brought suit against

1. Plaintiffs are: Erick Caraballo Seda, Daviannie Garcia Hernandez, Griselle Nazario Ortiz, Miguel A. Ruiz Sierra, Bethzaida Rosado, Maria E. Feliberty Rodriguez, Magdalena Torres Pabon, Lynda Soto Laracuenta, Aissa J. Vega Labino, Solyvette Martines Rodriquez, Nereida Santos Morales, Jackeline Cintron Pagan, Neftali Sepulveda Orengo, Lourdes Velazquez Irizarry, Leida E. Alomodavar Millan, Gianna Falletin Ramirez.

Francisco Javier Rivera, Mayor of the Municipality of Hormigueros and President of the Consortium's Board of Mayors ("the Board"); the Municipality of Hormigueros; Isidro Negron, Mayor of the Municipality of San German and Member of the Board; the Municipality of San German; Juan Crespo, the Consortium's Human Resources Manager; Rafael A. Montalvo Vazquez, the Consortium's Executive Director; and the Consortium (collectively "defendants"), alleging political discrimination under 42 U.S.C. § 1983, deprivations of their Fourteenth Amendment rights, and supplemental state law claims. Defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), arguing that the Workforce Investment Act ("WIA"), 29 U.S.C. §§ 2801–2945, provides an exclusive administrative procedure for discrimination claims precluding plaintiffs § 1983 claim. For the reasons discussed below, the Court **denies** defendants motion to dismiss.

## FACTUAL BACKGROUND

The Consortium is a non-profit partnership between several municipalities, namely Hormigueros, San German, Maricao, Cabo Rojo, Sabana Grande, Guanica, Yauco, Guayanilla, Lajas and Peñuelas. (Docket No. 45 at 4.) Following the Puerto Rico general elections on November 7, 2000, Popular Democratic Party ("PDP") mayoral candidates were elected to the municipalities of Hormigueros, San German, Sabana Grande, Guanica, Guayanilla, Lajas, and Peñuelas. (*Id.* at 6.) In Maricao and Cabo Rojo, the New Progressive Party ("NPP") incumbent mayor was re-elected, and in Yauco the NPP candidate won the elections. (*Id.*) As a result of the change in power in the various municipalities, PDP affiliates controlled the Board. (*Id.*) The newly elected PDP mayor of Hormigueros, Francisco Javier Rivera, be-

came president of the Board. (*Id.*) Soon after becoming president, he dismissed the incumbent Executive Director and appointed Rafael Montalvo Vazquez. (*Id.* at 7.) Following these events, particularly since January 26, 2001 and until September 30, 2001, defendants discharged or did not renew plaintiffs' contracts with the Consortium. (*Id.* at 8–24.)

On December 20, 2001, plaintiffs brought suit arguing that the defendants' sole purpose in those personnel decisions was to politically discriminate against them in violation of the First Amendment and of Puerto Rico Law. (*Id.* at 26.) They further argue that the defendants conspired to deprive plaintiffs of their rights under the Fourteenth Amendment. (*Id.*) Plaintiffs claim defendants violated § 2938(a)(2) of the WIA. (*Id.* at 8.)

On August 21, 2002, defendants moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the WIA's administrative procedure provides exclusive remedies for discrimination claims. (Docket No. 96.) Plaintiffs, on the other hand, argue that the WIA's statutory language does not expressly preclude a § 1983 claim, nor does it imply congressional intent to do so. (Docket No. 99.)

## DISCUSSION

A. *Standard of Review of a Rule 12(b)(1) Motion to Dismiss*

Pursuant to Fed.R.Civ.P. Rule 12(b)(1), a defendant can assert that the Court lacks subject matter jurisdiction to entertain an action. When deciding whether to dismiss a complaint for lack of subject matter jurisdiction the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted. . . ." *See Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996).

Motions brought under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review. *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994); *see Torres Maysonet v. Drillex, S.E.*, 229 F.Supp.2d 105, 107 (D.P.R.2002). Dismissal is proper pursuant to Fed. R.Civ.P. 12(b)(6) for "failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir.2000) (*quoting Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs' favor. *See Correa–Martinez*, 903 F.2d at 51; *Torres Maysonet*, 229 F.Supp.2d at 107. The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *See Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

When the Court determines that subject matter jurisdiction does not exist, "it must dismiss the case and not make any determination on the merits of the same." *Faura Cirino v. U.S.*, 210 F.Supp.2d 46, 50 (D.P.R.2002).

**B.** *Section 1983 claim*

To prevail in a § 1983 claim, plaintiffs bear the burden of showing that defendants, acting under color of state law, deprived them of their federal constitutional rights, privileges, or immunities. *See, e.g., Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 32 (1st Cir.1996). It is well-established that political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns*, 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia v. Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000).

The inquiry of whether plaintiff's rights are enforceable under § 1983 centers on congressional intent. *Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Congress can foreclose a remedy under § 1983 either by forbidding it expressly in the statute itself, or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983". *Id.* (*quoting Livadas v. Bradshaw*, 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)). In this context, there is a strong presumption that Congress intended to allow such suits and the burden of establishing the contrary rests on the defendants. *Stowell v. Ives*, 976 F.2d 65, 70, n. 5 (1st Cir.1992). *See Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir.1987). Likewise, plaintiffs ordinarily need not exhaust administrative remedies before filing a suit under § 1983. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Unless statutorily mandated, "application of the exhaustion doctrine is not a jurisdictional requirement, but within the discretion of the district court". *Accion Social de Puerto Rico, Inc. v. Viera Perez*, 831 F.2d 365, 369 (1st Cir.1987)(internal citations

omitted.) Whether exhaustion of administrative remedies is required prior to bringing a § 1983 suit should be answered by reference to congressional intent. *Patsy v. Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

### C. *Foreclosure of a § 1983 claim in the WIA and exhaustion of administrative remedies.*

#### 1. *Express foreclosure*

The first part of our inquiry is whether Congress foreclosed recourse to § 1983 in the WIA statute itself. *Stowell*, 976 F.2d at 67. Defendants claim that § 2938(a)(2) of the statute provides the remedial scheme for discrimination by programs operating under the WIA. (Docket No. 96 at 2.)

##### a. *The WIA statute*

■ Section § 2938(a)(2) provides that no individual shall be subjected to discrimination due to his or her political affiliation or belief. This provision, however, does not specify any grievance procedures to be followed nor does it state that administrative remedies must be exhausted prior to filing suit under § 1983.

Defendants argue that the authority given to the Secretary to issue regulations pursuant to § 2938(e) evinces congress' intent to foreclose a § 1983 cause of action for non-discrimination claims. (Docket No. 92 at 7.) They contend that the exhaustion of administrative remedies is warranted because § 2938(e) requires that the regulations adopted ensure that complaints "are processed in a manner that avoids duplication of effort." 29 U.S.C. § 2938(e). (Docket No. 92 at 2; Docket No. 112 at 2.) The only way to avoid such a duplication in a political discrimination case, they argue, is to give the Civil Rights Center ("CRC"), an office within the Department of Labor created under WIA, sole jurisdiction and

require the exhaustion of administrative remedies. (Docket No. 112 at 2–3.) Section 2938(e) establishes that the regulations "should adopt standards for determining discrimination and procedures for enforcement", yet it does not state that the administrative procedures must be exhausted nor that these procedures are the exclusive remedy available to § 2938 complainants.

Defendants further contend that § 2938's lack of specific language with regards to other remedies available to complainant, such as that present in other sections of the Act, evinces Congressional intent to make the administrative procedures the exclusive mechanism for non-discrimination claims. (Docket No. 96 at 9.) In absence of specific language, however, the Court may only conclude the contrary: Congress did not intend to foreclose a § 1983 action for claims of deprivation of a federally secured right. *See Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Victorian*, 813 F.2d at 721. *See also Frazier v. Fairhaven School Committee*, 276 F.3d 52, 62 (1st Cir.2002).

Moreover, § 2931(c)(4), which encompasses violations under § 2938, states that the remedies available for violations of WIA, shall not "be construed to prohibit a grievant or complainant from pursuing a remedy authorized under another Federal, State, or local law." Defendants claim that this section only applies to participants in the employment program. (Docket No. 112 at 4.) However, this section, refers to "violations of any requirement of this chapter [29 U.S.C. § 2801 et seq.]", thus including not only § 2938 but the entire statute. See 29 U.S.C. § 2931(c)(1),(3).

##### b. *The WIA's regulation*

■ Defendants further argue that the safeguards provided in the regulations

evince the intention to preclude a § 1983 claim. (Docket No. 96 at 8.) The WIA's administrative procedure requires that recipients, in this case the Consortium, establish local grievance procedures. 29 C.F.R. §§ 37.23, 37.76. Recipients must designate an Equal Opportunity Officer to serve as a liaison with the CRC and to make sure that subrecipients are not violating the non-discrimination provision. 29 C.F.R. §§ 37.23, 37.25. They must also provide initial and continued notice of nondiscrimination policy to registrants, applicants, participants, applicants for employment, employees, unions, professional organizations, subrecipients, and members of the public in general. 29 C.F.R. § 37.30. That notice must contain the information established in the regulations regarding complaint filing procedures and deadlines. *See* 29 C.F.R. §§ 37.30, 37.31. Any person who believes that he or she has been subjected to discrimination may file a complaint either with the recipient or the CRC. 29 C.F.R. §§ 37.70–37.72. Each recipient's grievance procedure must comply with the guidelines and required elements established in § 37.76.

When the recipient's Equal Opportunity Officer determines it has no jurisdiction over the complaint, he must notify the complainant that he or she has a right to file a complaint with the CRC. 29 C.F.R. § 37.78. The Director of the CRC may not accept the complaint if "(a) it was not timely filed; (b) the CRC lacks jurisdiction over the complaint; or (c) the CRC has previously decided the matter." *Id.* at § 37.82.

Defendants claim that pursuant to § 38.85(c)(2), when the complaint arises under § 2938 the CRC has sole jurisdiction and plaintiffs must exhaust the above mentioned procedures before seeking a remedy in federal court. (Docket No. 96 at 8.) Section 38.85(c)(2) states in relevant part:

(c) Where the complaint alleges discrimination by an entity that operates a program or activity financially assisted by a Federal grant making agency other than the Department, but that participates as a partner in a One–Stop delivery system, the following procedures apply: ... (2) **Where the complaint alleges discrimination on a basis that is prohibited by Section 188 of WIA, but not by any civil rights laws enforced by the Federal grantmaking agency, then the CRC has sole jurisdiction over the complaint, and will retain the complaint and process it pursuant to this part. Such bases generally include religion, political affiliation or belief,** ....

29 C.F.R. § 38.85(c)(2)(emphasis added). Defendants argue that because political affiliation is included in this section, plaintiffs must exhaust the administrative procedure. (Docket No. 96 at 2–3, 8.)

Defendants do not claim, however, that the Consortium is an entity operating a program or activity as defined in § 38.85(c)(2). Furthermore, the Court's inquiry centers on the statutory language and not the regulations adopted. *Stowell,* 976 F.2d at 67. A plaintiffs "ability to invoke § 1983 cannot be defeated simply by '[t]he availability of administrative mechanisms to protect the plaintiff's interests.'" *Blessing,* 520 U.S. at 347, 117 S.Ct. 1353 (*quoting Golden State v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). Moreover, § 1983 is still available even when the Secretary of Labor's oversight powers are accompanied by state grievance procedures. *Blessing,* 520 U.S. at 348, 117 S.Ct. 1353 (internal citations omitted.)

In sum, the WIA does not contain any particular phraseology that unmistakably

evinces Congressional intent to foreclose a § 1983 claim or require exhaustion of the procedures available under it's regulations. *See Frazier,* 276 F.3d at 62. This conclusion, however, does not end our inquiry.

### 2. *Implied Foreclosure*

■ To determine whether Congress impliedly foreclosed recourse to § 1983, the Court must review the legislative history and other traditional aids of statutory interpretation to determine congressional intent. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)(internal citations omitted); *Frazier,* 276 F.3d at 68 (*citing Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n,* 989 F.2d 1266, 1268 (1st Cir. 1993)).

■ The WIA's legislative history is silent with regards to discrimination claims, exhaustion of grievance procedures, or preclusion of a § 1983 claim. *See* P.L. 102–220. *See also* H.R. Rep. No. 105–689 (1998) *reprinted in* 1998 U.S.C.C.A.N. 332. Furthermore, no Circuit or District court has addressed the matter.

In light of the statute's silence and the absence of judicial guidance, one may consider how courts have addressed this issue with regards to WIA's predecessor statutes; the Job Training Partnership Act ("JTPA") 29 U.S.C. §§ 1501–1792b, and the Comprehensive Employment Training Act ("CETA"), 29 U.S.C §§ 201–999. Plaintiffs contend that WIA did not overrule these cases and therefore, § 1983 is available to them. (Docket No. 99 at 5–7.)

The First Circuit has not answered this question, and the Courts that have dealt with the issue under both the JTPA and the CETA have arrived at different conclusions. For example, in *Uniformed Firefighters Ass'n v. City of New York,* 676 F.2d 20 (2nd Cir.1982), the Second Circuit

held that CETA precluded a § 1983 claim. Following the Supreme Court's decision in *Sea Clammers* the Circuit Court found that, even in light of the statute's savings clause, CETA's comprehensive remedial scheme provided the exclusive remedy. *Uniformed Firefighters,* 676 F.2d at 22–23. The Circuit Court, however, decided the § 1983 equal protection claim. *See* 676 F.2d 20.

Other circuit courts have therefore interpreted *Uniformed Firefighters* to mean that the statute's savings clause precluded § 1983 actions for purely CETA based claims but not for federal constitutional claims. *See Page v. DeLaune,* 837 F.2d 233, 240 (5th Cir.1988); *Davis v. Mobile Consortium of CETA,* 857 F.2d 737, 741 (11th Cir.1988); *Black v. Broward Employment and Training Administration,* 846 F.2d 1311, 1312–1314 (11th Cir.1988). *But see Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153, 158 (4th Cir. 1984); *Blitz v. Donovan,* 740 F.2d 1241, 1248 (D.C.Cir.1984)

This District Court addressed the matter under CETA in *Colon Collazo v. Cordero Santiago,* and held that exhaustion was required despite plaintiffs' procedural due process claims. 698 F.Supp. 30, 33–35 (D.P.R.1988). The facts of that case, however, differ substantially from the facts of this case. *Colon Collazo* dealt with audit reports and misuse of funds. Furthermore, the complaint's principal claim was that the prime sponsor in charge of CETA's administration had not acted according to the time frames established in the Act's regulations. Moreover, the parties had made use of the administrative mechanism available, therefore, the complete exhaustion of administrative remedies was warranted.

Applying the rationale of the CETA cases, the Sixth Circuit held in *AFSCME*

*Local 506 v. Private Industry Council*, that there was no implied private right of action under § 1553(b)(3)(B) of the JTPA. 942 F.2d 376, 381 (6th Cir.1991). That section protected regular employees from being displaced by JTPA participants. Thus, the case dealt with a purely JTPA based claim and not a federal constitutional claim. Following the *AFSCME Local 506* decision, the District Court of Pennsylvania held in *Berry v. Pennsylvania Pressed Metals, Inc.*, that according to § 1574(g) of the act, the JTPA's administrative procedure provided relief for plaintiff's claims, i.e. his discharge in breach of the JTPA contract. 846 F.Supp. 27, 29–31(M.D.Pa.1994). As in the previously discussed case, the case was not a federal constitutional claim.[2]

Therefore, these cases do not support the conclusion that WIA complainants are barred from bringing a § 1983 claim without first exhausting administrative procedures. Neither does the statute manifest Congress' expressed or implied intent to foreclose such claims. The Court may not lightly infer or conclude that Congress intended to preclude a § 1983 claim as a remedy for the deprivation of a federally secured right. *See Smith*, 468 U.S. at 1012, 104 S.Ct. 3457; *Victorian*, 813 F.2d at 721.

In sum, defendants have failed to "muster adequate evidence of Congress' prohibitory intent". *Stowell*, 976 F.2d at 70, n. 5. They have not met their burden of showing that "the remedial devices provided in [the Act] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983". *Wright v. City of Roanoke Rede-*

velopment and Housing Authority, 479 U.S. 418, 424, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)(*quoting Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615).

In light of the foregoing, the Court concludes that according to the WIA's language, the legislative history, and the cases decided under the JTPA and CETA, the plaintiffs are not required to exhaust administrative remedies with regards to their First Amendment § 1983 claim.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motion to dismiss.

IT IS SO ORDERED.

---

**2.** In *Casey v. Central Oregon Intergovernmental Council*, a constitutional rights case, the District Court of Oregon held that according to *AFSCME Local 506*, there is no private right of action under the JTPA and that CETA, did not give rise to a § 1983 claim. No. Civ.98–1246–HA, 2000 WL 33201929 *4 (Dec. 1, 2000). The Court cited *Davis* and *Uniformed Firefighters* to support its conclusion. The Court, nonetheless, dismissed the § 1983 claim on the grounds that plaintiff failed to prove supervisor liability.